912 So.2d 1286 (2005)
Terry P. SANDERS, Appellant,
v.
STATE of Florida, Appellee.
No. 2D04-2046.
District Court of Appeal of Florida, Second District.
November 4, 2005.
*1287 James Marion Moorman, Public Defender, and Kimberly Nolen Hopkins, Special Assistant Public Defender, Bartow, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Jonathan P. Hurley, Assistant Attorney General, Tampa, for Appellee.
ALTENBERND, Judge.
Terry P. Sanders appeals his judgment and sentence for attempted second-degree murder while discharging a firearm and inflicting great bodily harm. Mr. Sanders relies on Franklin v. State, 877 So.2d 19 (Fla. 4th DCA 2004), and Ray v. State, 403 So.2d 956 (Fla.1981), to support his argument that it was fundamental error to list attempted second-degree murder while discharging a firearm and inflicting great bodily harm on the verdict form as a lesser offense to attempted first-degree murder while discharging a firearm and inflicting great bodily harm. He maintains that the structure of lesser offenses on the verdict form constituted fundamental error because he received a sentence for this "lesser" offense that was the same as the sentence he could have received for the main offense and that was actually longer than the sentence he would or could have received for one or more of the "greater" offenses on the verdict form. We affirm, but write to demonstrate that the 10-20-life reclassification statute and its enhanced penalties, along with other methods of nonguidelines sentencing, make it difficult, if not impossible, to list offenses on a verdict form in a manner that always assures that each successive option on the verdict form will result in a sentence that is less than the sentence which could be imposed for an earlier option on the verdict form. Because the issues presented in this case could affect many cases involving firearms, we certify a question to the supreme court.
Mr. Sanders shot a bouncer at Club Turbulence in Ybor City on May 16, 2002. Fortunately, the bullet passed through the bouncer's leg without causing a fatal injury. The State charged Mr. Sanders with attempted first-degree murder. Because the State maintained that he discharged a firearm and inflicted great bodily harm, it sought to reclassify the felony and impose an enhanced penalty under section 775.087, Florida Statutes (2002), which is commonly referred to as the 10-20-life statute. In light of his prior record, the State also noticed Mr. Sanders of the possibility that he could receive a sentence as a habitual offender.
At the trial, the court had difficulty determining the appropriate list of lesser-included offenses. The attorneys and the judge collectively decided that aggravated battery was a lesser offense of the main offense because the information alleged the discharge of a firearm resulting in great bodily harm, but they ultimately concluded that an instruction on this lesser offense would give the State "two bites at the apple," because it resulted in the same penalty as another lesser offense, attempted second-degree murder while discharging a firearm and inflicting great bodily harm. Accordingly, the trial court did not instruct on any variety of aggravated battery *1288 and instead instructed the jury on attempted second-degree murder and attempted voluntary manslaughter as the appropriate lesser offenses. The verdict form contained each of these offenses in the usual order. Where applicable, the verdict form also provided the jury with the option of finding that the offense was committed (1) with a firearm (2) that was discharged (3) inflicting great bodily injury. These combinations resulted in a verdict form with eleven options. To assist the reader of this opinion, a copy of this verdict form is attached as Appendix A along with a description of the degree of each felony and the possible penalty for each option.[1] Mr. Sanders did not object to these instructions or to the verdict form.
The jury found Mr. Sanders guilty of the lesser-included offense of attempted second-degree murder with a firearm and specifically decided that Mr. Sanders discharged the firearm and inflicted great bodily harm. This was option E on the verdict form.
Although attempted second-degree murder with a firearm is a first-degree felony for which the usual maximum penalty is thirty years' imprisonment, the minimum mandatory sentence when the firearm is discharged inflicting great bodily harm is a term no less than twenty-five years and no more than life. Thus, at the sentencing hearing, the trial court had discretion to impose a sentence between twenty-five years' imprisonment and life imprisonment. The trial court determined that Mr. Sanders was eligible for a habitual offender sentence if the court elected to use that sentencing method. Mr. Sanders' attorney argued vigorously for a sentence at the bottom of the minimum mandatory range. However, Mr. Sanders had already committed earlier offenses involving a firearm. Moreover, the evidence at trial indicated that Mr. Sanders had fired more than one shot in an area with many bystanders. Accordingly, the trial court exercised its discretion to impose a sentence of life imprisonment under the 10-20-life statute.
Mr. Sanders argues that he is entitled to a new trial because the lesser-included offense of which he was convicted was not a true "lesser" offense. Mr. Sanders relies on Franklin[2] for the proposition that his conviction was not "lesser" because the penalty imposed, life imprisonment, is not less than the penalty for the main offense with which he was charged. Franklin, 877 So.2d at 20. The penalty is actually greater than the penalty he might have received if the jury had selected option D, rather than option E, on the verdict form.
In Franklin, the defendant was apparently charged with the main offense of attempted second-degree murder while discharging a firearm and inflicting great bodily harm. The opinion does not explain the verdict form in detail, but the discussion in Judge Stone's dissent suggests that the verdict form was somewhat similar to the verdict form used in this case. In Franklin, the main offense was a first-degree felony. See §§ 782.04(2), 777.04(4)(c), 775.087(1)(b), Fla. Stat. (2002). Assuming that the verdict form listed the varieties of attempted second-degree murder in an order similar to that used in this *1289 case, attempted second-degree murder (without a firearm) was the fourth option and it was a second-degree felony. See §§ 782.04(2), 777.04(4)(c). The trial court in Franklin then instructed the jury on the "lesser" offense of aggravated battery while discharging a firearm and inflicting great bodily harm. This offense is a first-degree felony.[3]See §§ 784.05(2), 775.087(1)(b), Fla. Stat. (2002).
In Franklin, the Fourth District focused on the argument that the reclassified form of aggravated battery does not carry a lesser punishment than attempted second-degree murder while discharging a firearm and inflicting great bodily harm. It is worth considering, however, that attempted second-degree murder (without a firearm) was presumably listed on Franklin's verdict form immediately preceding the reclassified aggravated battery offense. Attempted second-degree murder is actually a lesser offense, both in degree and sentence, than aggravated battery once aggravated battery has been reclassified due to the firearm. Thus, Franklin's jury appears to have been given a verdict form that unquestionably listed the lesser offenses in an order that was not descending in penalty.
In Mr. Sanders' case, of course, the trial court did not instruct on aggravated battery as a lesser offense because it concluded that the offense was not a lesser and that such an instruction would give the State "two bites at the apple." The offenses listed on Mr. Sanders' verdict form began with life felonies and ended with a third-degree felony. The offenses were not listed in an order that guaranteed that the trial court must impose a lesser penalty, but if one considers all the various sentencing schemes, they are listed in an order that does give the trial court discretion to impose a sentence that is less severe than the preceding option on the verdict form.[4]
We conclude that the offenses listed on the verdict form were all appropriate lesser offenses of the main charge and that the order in which they were listed was also appropriate. This is not a situation like Franklin in which a "lesser" offense was actually greater in degree and punishment than the offense that immediately preceded it on the verdict form, and the same both in degree and in punishment as the main offense charged. Especially in the absence of any objection, we conclude that it is permissible for the trial court to place lesser offenses on the verdict form in an order that generally gives the trial court the discretion to impose a lesser penalty, even if that order also gives the trial court the discretion to impose an equal or greater penalty. To that extent, we disagree with the reasoning in Franklin.
The Fourth District in Franklin relied upon Ray v. State, 403 So.2d 956 (Fla.1981). In Ray, the supreme court considered the issue of whether it is fundamental error to instruct a jury on a lesser-included offense when the offense is, in fact, not a lesser offense of the main charge. The issue in Ray involved an offense that was not a lesser offense because its substantive *1290 elements did not permit it to be either a necessary or permissive lesser offense. In that context, the court held an erroneous lesser-included charge will not be considered fundamental error if
(1) the improperly charged offense is lesser in degree and penalty than the main offense or (2) defense counsel requested the improper charge or relied on that charge as evidenced by argument to the jury or other affirmative action.
Id. at 961.
In Mr. Sanders' case, the substantive elements of attempted second-degree murder while discharging a firearm and inflicting great bodily harm clearly make it a lesser of the main charge of attempted first-degree murder while discharging a firearm and inflicting great bodily harm. Thus, the fundamental error test created in Ray probably does not apply in this case because the challenged lesser offense was not "improperly charged." On the other hand, the Supreme Court Committee on Standard Jury Instructions in Criminal Cases has relied on the analysis of Ray in creating the Schedule of Lesser Included Offenses. See Florida Standard Jury Instructions in Criminal Cases p. 608 (4th ed. 2002). Thus, the test in Ray has been given broader application beyond the narrow issue that confronted the supreme court in Ray.
The offense in Ray occurred in 1975 when the law of sentencing was far simpler and when the concepts of "degree and penalty" were very intertwined. On the other hand, in 1975 the concepts of reclassification for use of a firearm and enhancement of sentence as a habitual offender already existed. See §§ 775.087, .084, Fla. Stat. (1975). Ray does not expressly treat a reclassified offense or an enhanced penalty the same as a lesser or greater offense. The standard jury instructions do not describe reclassification or enhancement as matters that create lesser or greater offenses. Fla. Std. Jury Inst. (Crim.) 3.3(a), 3.4. For example, the jury in this case was told only that attempted second-degree murder and attempted voluntary manslaughter were "lesser crimes indicated in the definition of attempted murder in the first degree." For each of these offenses, the jury was informed that it would need to make decisions about the use or discharge of a firearm and the nature of any injury inflicted. The jury was not told that these decisions would result in a reclassification of the felony or an enhancement of the penalty. Although both reclassification and enhancement logically seem to create lesser and greater offenses, and the trial court in this case used a verdict form that reflects that reality, it is not entirely clear to this court that the supreme court intends trial courts to analyze reclassifications and enhancements in the same manner as lesser offenses when preparing verdict forms.
The supreme court has continued to rely on the "degree and penalty" test for determining fundamental error even after the law of sentencing has become very complex. See Nesbitt v. State, 889 So.2d 801, 802-03 (Fla.2004). In this case, we are holding that an offense is lesser in "penalty" not only when the conviction for the lesser offense is guaranteed to result in a lesser penalty, but also when it will give the trial judge discretion to impose a lesser penalty than the offenses listed higher on the verdict form. We are permitting the trial court to instruct on such a lesser offense even if it could give the trial court discretion to impose a sentence as long as the sentence for the main offense and even longer than the sentence for another lesser offense that is listed higher on the verdict form. If the supreme court intends in Ray and Nesbitt to limit lesser *1291 offenses only to those offenses that are guaranteed to result in a lesser penalty, then we are wrong. In that case, Mr. Sanders would be entitled to a new trial because the error must be considered fundamental under either of the two tests outlined in Ray. 403 So.2d at 961. The second test is met because his lawyer did not request this charge and barely mentioned it during his closing argument. Id.
The law concerning lesser-included offenses often discusses the importance of the jury's inherent pardon power. See Vickery v. State, 869 So.2d 623 (Fla. 5th DCA 2004); Sanders v. State, 847 So.2d 504 (Fla. 1st DCA 2003) (Ervin, J., concurring and dissenting). However, except in cases involving the death penalty, juries are never instructed on the penalties that the trial court might impose based on their verdict. See Fla. R.Crim. P. 3.390(a). Admittedly, Florida Standard Jury Instruction (Criminal) 3.4 informs the jury about the "lesser" crimes to the "main" crime, but it never gives the jury any assurance that the penalty imposed for a lesser crime will actually be less than the minimum penalty for the main crime. As a practical matter, before a sentence is imposed, a sentencing judge normally considers both the jury's rejection of a greater offense and information deemed prejudicial to the defendant, such as a prior record, that was not provided to the jury.
Thus, given the current complexity of sentencing, we are not inclined to force trial courts to devise verdict forms that always guarantee that the defendant will receive a lesser penalty for each successive option on the verdict form. We recognize the importance of this issue, especially in an era where juries are required to make more detailed findings that affect sentencing, and certify the following question to the supreme court as a question of great public importance:
IN ORDER FOR AN OFFENSE TO BE A LESSER-INCLUDED OFFENSE, MUST IT NECESSARILY RESULT IN A LESSER PENALTY THAN EITHER THE PENALTY FOR THE MAIN OFFENSE OR THE NEXT GREATER OFFENSE ON THE VERDICT FORM?
Affirmed.
SILBERMAN and WALLACE, JJ., Concur.

APPENDIX A

VERDICT FORM
We, the jury, find as follows, as to Count I of the charge: (Check only one as to this count)
___A. The defendant is guilty of Attempted First-Degree Murder, with a Firearm (Discharging Firearm and Inflicting Great Bodily Harm), as charged.
Degree of Felony: Life Felony.

Maximum penalty with mandatory 10-20-life enhancement because a firearm was utilized during the crime: Life imprisonment. §§ 782.04(1)(a); 777.04(4)(b); 775.087(1)(a); 775.082(3)(a)(3).

Minimum mandatory under 10-20-life for discharging a firearm during the offense and causing great bodily harm: not less than 25 years' imprisonment, not more than life. § 775.087(2)(a)(3).

Maximum HFO sentencing: Life imprisonment. § 775.084(4)(a)(1).
___B. The defendant is guilty of Attempted First-Degree Murder, with a Firearm (Discharging Firearm).
Degree of Felony: Life Felony.

Maximum penalty with mandatory 10-20-life enhancement because a firearm was utilized during the crime: Life imprisonment. §§ 782.04(1)(a); *1292 777.04(4)(b); 775.087(1)(a); 775.082(3)(a)(3).

Minimum mandatory under 10-20-life for discharging a firearm during the offense: 20 years' imprisonment. § 775.087(2)(a)(2).

Maximum HFO sentencing: Life imprisonment. § 775.084(4)(a)(1).
___C. The defendant is guilty of Attempted First-Degree Murder, with a Firearm (Possessing Firearm).
Degree of Felony: Life Felony.

Maximum penalty with mandatory 10-20-life enhancement because a firearm was utilized during the crime: Life imprisonment. §§ 782.04(1)(a); 777.04(4)(b); 775.087(1)(a); 775.082(3)(a)(3).

Minimum Mandatory under 10-20-life for possessing a firearm during the offense: 10 years' imprisonment. § 775.087(2)(a)(1).

Maximum HFO sentencing: Life imprisonment. § 775.084(4)(a)(1).
___D. The defendant is guilty of Attempted First-Degree Murder (Did not Possess or Discharge Firearm).
Degree of Felony: First Degree.

Maximum Guidelines Sentence: 30 years' imprisonment. §§ 782.04(1)(a); 777.04(4)(b); 775.082(3)(b).

Maximum HFO sentencing: Life imprisonment. § 775.084(4)(a)(1).
___E. The defendant is guilty of Attempted Second-Degree Murder, with a Firearm (Discharging Firearm and Inflicting Great Bodily Harm).
Degree of Felony: First Degree.

Maximum penalty with 10-20-life enhancement because a firearm was utilized during the crime: 30 years' imprisonment. §§ 782.04(2); 777.04(4)(c); 775.087(1)(b); 775.082(3)(b).

Minimum Mandatory under 10-20-life for discharging a firearm during the offense and causing great bodily harm: not less than 25 years' imprisonment, not more than life. § 775.087(2)(a)(3).

Maximum HFO sentencing: 30 years' imprisonment. § 775.084(4)(a)(2).
___F. The defendant is guilty of Attempted Second-Degree Murder, with a Firearm (Discharging Firearm).
Degree of Felony: First Degree.

Maximum penalty with 10-20-life enhancement because a firearm was utilized during the crime: 30 years' imprisonment. §§ 782.04(2); 777.04(4)(c); 775.087(1)(b); 775.082(3)(b).

Minimum Mandatory under 10-20-life for discharging a firearm during the offense: 20 years' imprisonment. § 775.087(2)(a)(2).

Maximum HFO sentencing: 30 years' imprisonment. § 775.084(4)(a)(2).
___G. The defendant is guilty of Attempted Second-Degree Murder, with a Firearm (Possessing Firearm).
Degree of Felony: First Degree.

Maximum penalty with 10-20-life enhancement because a firearm was utilized during the crime: 30 years' imprisonment. §§ 782.04(2); 777.04(4)(c); 775.087(1)(b); 775.082(3)(b).

Minimum Mandatory under 10-20-life for possessing a firearm during the offense: 10 years' imprisonment. § 775.087(2)(a)(1).

Maximum HFO sentencing: 30 years' imprisonment. § 775.084(4)(a)(2).
___H. The defendant is guilty of Attempted Second-Degree Murder (Did Not Possess or Discharge Firearm).
Degree of Felony: Second Degree.

Maximum Guidelines Sentence: 15 years' imprisonment. §§ 782.04(2); 777.04(4)(c); 775.082(3)(c).

*1293 Maximum HFO sentencing: 30 years' imprisonment. § 775.084(4)(a)(2).
___I. The defendant is guilty of Attempted Voluntary Manslaughter, with a Firearm.
Degree of Felony: Second Degree.

Maximum penalty with 10-20-life enhancement because a firearm was utilized during the crime: 15 years' imprisonment. §§ 782.07(1); 777.04(4)(d); 775.087(1)(c); 775.082(3)(c).

Minimum Mandatory under 10-20-life: None  attempted manslaughter does not qualify for a minimum mandatory under this statute. See Murray v. State, 491 So.2d 1120 (Fla.1986).

Maximum HFO sentencing: 10 years' imprisonment. § 775.084(4)(a)(3).
___J. The defendant is guilty of Attempted Voluntary Manslaughter, without a Firearm.
Degree of Felony: Third Degree.

Maximum Guidelines Sentence: 5 years' imprisonment. §§ 782.07(1); 777.04(4)(d); 775.082(3)(d).

Maximum HFO sentencing: 10 years' imprisonment. §§ 775.084(4)(a)(3).
___K. The defendant is not guilty.
NOTES
[1] By publishing the verdict form, we are not placing any stamp of approval on this verdict form or its resolution of the issues engendered by Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).
[2] In Franklin, the Fourth District certified a question of great public importance to the supreme court. The supreme court stayed proceedings in State v. Franklin, No. SC04-1523, pending disposition of State v. Iseley, 876 So.2d 561 (Fla.2004), which is also pending in the supreme court.
[3] It is entirely possible that the verdict form in Franklin isolated the firearm issues and the question of great bodily harm in a location separate from the list of offenses. It is not clear to us that such a separation would solve the problems discussed in this case and in Franklin.
[4] If Mr. Sanders had not been eligible for sentencing as a habitual offender, option E on his verdict form would have given the trial court discretion to impose a sentence that was longer than any sentence that could have been imposed under option D. Because Mr. Sanders was eligible for habitual offender sentencing, we do not have to consider this hypothetical situation.