975 So.2d 444 (2007)
Patrick CHAMBERS, Petitioner,
v.
STATE of Florida, Respondent.
No. 2D05-4116.
District Court of Appeal of Florida, Second District.
April 13, 2007.
Rehearing Denied June 8, 2007.
*445 Patrick Chambers, pro se.
Bill McCollum, Attorney General, Tallahassee, and Susan D. Dunlevy, Assistant Attorney General, Tampa, for Respondent.
ALTENBERND, Judge.
Patrick Chambers has filed a petition alleging ineffective assistance of appellate counsel concerning the en banc opinion issued by this court in Chambers v. State, 880 So.2d 696 (Fla. 2d DCA 2004). Although we deny the petition, the issue that Mr. Chambers raises without assistance of counsel is an exceptionally difficult issue that was overlooked by all those trained in the law that reviewed his case on direct appeal. This court delayed this decision in hopes that a case pending in the supreme court, Sanders v. State, 944 So.2d 203 (Fla. 2006), would provide guidance. Although the supreme court's decision in Sanders has been helpful to this court, it has ironically disclosed yet another troublesome issue in this case.
The issue presented by Mr. Chambers is whether it is fundamental error to instruct a jury on an improper permissive lesser-included offense that is lesser in degree than the primary offense, but which when impacted by statutes enhancing the penaltycan provide the trial court with the option of imposing the same penalty as the primary offense. After considering the principles espoused by the supreme court in Sanders and in a prior opinion, Ray v. State, 403 So.2d 956 (Fla.1981), we conclude it is not fundamental error to instruct the jury on a permissive lesser-included offense that was not charged in the information when (1) the lesser offense was lesser in degree than the charged offense when analyzed without any reclassification, and (2) the jury has available to it outcomes under the lesser offense that would require the trial court to impose a *446 lesser penalty or punishment for the lesser offense than the penalty for the charged offense.
Mr. Chambers raises this issue specifically as it relates to the decision at trial to instruct the jury on aggravated assault as a lesser offense of attempted second-degree murder, even though the allegations of the information did not support a charge of aggravated assault. We conclude that there was no fundamental error in this regard. However, the release of the opinion in Sanders reveals another issue in the verdict form, not addressed by Mr. Chambers in his direct appeal or in this petition: Whether it was fundamental error, before the decision in Sanders, to list attempted manslaughter, a third-degree felony, prior to aggravated battery, a second-degree felony, on the verdict form. We conclude that this additional aspect of the verdict form, or the combination of this and the improper lesser offense, did not constitute fundamental error.
In light of these holdings, we conclude that Mr. Chambers has suffered no prejudice from appellate counsel's failure to raise these issues either on direct appeal or by motion for rehearing. Accordingly, we deny the petition.

I. THE BASIC FACTS OF THE CASE
As explained in the opinion in Mr. Chambers' direct appeal, Mr. Chambers was involved in a shooting that occurred on March 21, 2002, inside an apartment occupied by Marcia Radway and Richard Blair. Mr. Chambers admitted that he went to the apartment that evening, but claimed that he was in another room when a fight broke out between the two occupants and a man named "Dray." No such person was ever located. The two occupants claimed that Mr. Chambers forced his way into their apartment and threatened Mr. Blair, and then Ms. Radway, with a gun. Ms. Radway allegedly struggled with Mr. Chambers. During the struggle, the gun discharged, and she was shot in the leg. Chambers, 880 So.2d at 698.
The State charged Mr. Chambers with burglary of a dwelling, aggravated assault of Mr. Blair, and attempted second-degree murder of Ms. Radway.[1] The information charging Mr. Chambers with these offenses alleged that he was armed with a gun and included language to support an enhanced penalty under the 10-20-life statute. See § 775.087(2), Florida Statutes (2002). Specifically, based upon the bullet wound to Ms. Radway's leg, the information alleged that Mr. Chambers possessed a firearm, discharged that firearm, and caused great bodily harm to Ms. Radway.
The jury found Mr. Chambers not guilty of the burglary and the aggravated assault of Mr. Blair. Thus, those offenses play no role in our analysis. As to the charge of attempted second-degree murder of Ms. Radway, the jury received instructions and a verdict form that included several lesser-included offenses. In addition to the charged crime, the jury was given the option of finding Mr. Chambers guilty of six other lesser offenses, listed here in the order they appeared on the verdict form: attempted manslaughter, aggravated battery, aggravated assault, felony battery, battery, and assault. On the verdict form, the charged offense and the next three offenses (attempted manslaughter, aggravated battery, and aggravated assault) were each followed immediately by three *447 subheadings that asked the jury whether Mr. Chambers possessed a firearm, discharged that firearm, and caused great bodily harm to Ms. Radway while committing that offense. The remaining crimes felony battery, battery, and assaultare crimes that do not permit enhancement under the 10-20-life statute, see § 775.087(2)(a)(1)(a-r), and thus they appeared on the verdict form without any subheadings. To assist the reader, Appendix A of this opinion reproduces that portion of the verdict form related to attempted second-degree murder and the various lesser offenses; the italicized text, not part of the original verdict form, explains the potential punishments for each offense based upon the applicable statutes.
The jury convicted Mr. Chambers of aggravated assault and found that he discharged his firearm resulting in great bodily harm to Ms. Radway. For this offense, he was sentenced to twenty-five years' imprisonment, which was the mandatory minimum term pursuant to section 775.087(2)(a)(3).[2]
It is undisputed that aggravated assault is not a necessary lesser-included offense to attempted second-degree murder and that based upon the allegations in the information in this case it was not a permissive lesser-included offense. See Sanders, 944 So.2d at 206 (explaining that necessary lesser-included offenses are those in which the statutory elements of the lesser offense are always subsumed within those of the charged offense; permissive lesser-included offenses are those involving facially distinct elements, but the facts alleged in the accusatory pleadings are such that the lesser offense cannot help but be perpetrated if the greater offense has been); see also Blandin v. State, 916 So.2d 969, 971 (Fla. 2d DCA 2005) (stating, "a jury instruction on a permissive lesser included offense is only permitted if the elements of the lesser offense are alleged in the information and there is proof of those elements at trial"). If Mr. Chambers' counsel had objected, this instruction should not have been given. However, Mr. Chambers' trial counsel did not object to this instruction.
If one considers the evidence and the verdict form, trial counsel would appear to have had a reasonable basis to make such a tactical decision. Attempted second-degree murder, attempted manslaughter, and aggravated battery each suggested a physical injury that was intentionally inflicted, thus directly implicating the type of findings that would support a full enhancement under the 10-20-life statute. With respect to aggravated assault, however, the jury could have concluded that Mr. Chambers' intent was to threaten, and not to physically injure, the victim. Because the victim claimed that she struggled with Mr. Chambers, it was possible that the jury could have decided that the gun went off accidentally during the struggle. In that event, the jury could have found that Mr. Chambers possessed the gun during the assault but that he was not responsible for its discharge and the resulting injury. Thus, the improper permissive lesser offense of aggravated assault, from a tactical perspective, might have been the best option to provide Mr. Chambers with a sentence that was less than what he would receive for the charged offense or the next two offenses listed. Further, although the charged offense or the next two offenses listed may have permitted a similar sentencing range, with or without the enhancements from 10-20-life, a reasonable *448 lawyer might believe that a judge would be more likely to impose a sentence closer to the bottom of the potential range if the jury selected the lowest possible offense. It is noteworthy that the trial judge in this case imposed a twenty-five-year term of imprisonment and did not elect to sentence Mr. Chambers to life in prisona decision the trial judge may not have made if Mr. Chambers had been convicted of attempted second-degree murder.

II. THE DIRECT APPEAL AND MR. CHAMBERS' ARGUMENT IN THIS PETITION
On direct appeal, Mr. Chambers argued that the listing of aggravated assault on the verdict form was fundamental error entitling him to a new trial. The case turned on a proper interpretation of the rule announced in Ray v. State, 403 So.2d 956 (Fla.1981). In Ray, the Florida Supreme Court held that instructing a jury on a permissive lesser-included offense that was not charged in the information was error, but that the error was not fundamental if the improper instruction involved a crime that was "lesser in degree and penalty than the main offense." Id. at 961 (emphasis added). In our opinion in Mr. Chambers' direct appeal, we similarly rejected Mr. Chambers' argument that the improper instruction on the lesser offense of aggravated assault was fundamental error and explained: "Continuing to apply the Ray analysis, we conclude that aggravated assault with a firearm, a second-degree felony, is lesser in degree and punishment than attempted second-degree murder with a firearm, a first-degree felony." Chambers, 880 So.2d at 700 (emphasis added).[3]
In this petition, Mr. Chambers correctly observes that we did not consider the consequences of the 10-20-life statute when we announced that aggravated assault "with a firearm" was "lesser in punishment" than attempted second-degree murder "with a firearm." Without the possible enhancement for the involvement of a firearm, aggravated assault was lesser in degree and punishment than attempted second-degree murder. However, if the jury determined that Mr. Chambers discharged a firearm resulting in great bodily harm, the minimum mandatory sentence and the potential range of penalties for the charged offense and for the improper lesser offense would be identical.
Specifically, attempted second-degree murder is a second-degree felony, see § 782.04(2), Fla. Stat. (2002) (classifying second-degree murder as a first-degree felony, punishable by a maximum sentence of life imprisonment); and § 777.04(4)(c), Fla. Stat. (2002) (providing that an attempt to commit a crime that is a first-degree felony punishable by life imprisonment is classified as a second-degree felony), which is reclassified to a first-degree felony pursuant to section 775.087(1)(b) if the perpetrator commits the crime while in actual possession of a weapon or firearm. In contrast, aggravated assault is a third-degree felony. See § 784.021(2), Fla. Stat. (2002).
Section 775.087(2)(a)(3) requires that any person who is convicted of a felony enumerated in section 775.087(2)(a)(1), or of attempting to commit one of those felonies, "and during the course of the commission of the felony such person discharged *449 a `firearm' . . . and, as the result of the discharge, death or great bodily harm was inflicted upon any person, the convicted person shall be sentenced to a minimum term of imprisonment of not less than 25 years and not more than a term of imprisonment of life in prison." The enumerated felonies include murder and aggravated assault. § 775.087(2)(a)(1)(a), (f). The penalty range applies without respect to the degree of the underlying crime committed.
Because Mr. Chambers reads Ray to require an unobjected-to, impermissible, lesser-included offense to stand only if it is "lesser in degree" and "lesser in penalty," he argues that he was actually entitled to a new trial under Ray and under the analysis we applied to his case because the 10-20-life statute required the "same penalty"not a lesser onefor both the charged offense and the improper lesser offense. He argues that his appellate lawyer should have discovered this flaw in our opinion and moved for rehearing.
Mr. Chambers must be congratulated for presenting an excellent issue that initially led both this court and the State to conclude that he might very well be entitled to relief. On further reflection, however, we conclude that the result in Mr. Chambers' direct appeal was correct. Although we erred in declaring that aggravated assault with a firearm is categorically "lesser in punishment" than attempted second-degree murder with a firearmat least when the provisions of the 10-20-life statute applywe continue to conclude that the jury instructions and verdict form provided at Mr. Chambers' trial do not constitute fundamental error under the reasoning of Ray and its proper application to this case. Consequently, Mr. Chambers is not entitled to a new appeal or a new trial.

III. A REVISION OF THE RAY TEST FOR USE IN CASES INVOLVING ENHANCEMENT
This case demonstrates that the simple test employed in Ray to determine fundamental error, relying on felony degree and punishment, must be refined to address cases affected by enhancement. The analysis in this case, as in Ray, begins with the premise that a conviction on a charge not made by the indictment or information is a denial of due process of law. See Crain v. State, 894 So.2d 59 (Fla.2004). This principle applies to lesser-included offenses, and thus generally prohibits the State from obtaining a conviction for a lesser-included offense, regardless of the proof at trial, unless the charging document alleges all of the necessary elements for that offense. See D.L. v. State, 491 So.2d 1243 (Fla. 2d DCA 1986). Nevertheless, a defendant may see a benefit in ignoring or inviting such an error, concluding that although a jury may not be inclined to acquit him of any wrongdoing, they may be inclined to disagree that the charge is as serious as alleged by the State. The benefit only occurs, however, if the erroneous charge permits some chance that the defendant will receive a lesser sentence or perhaps some related future benefit by virtue of being convicted of a lesser charge.
On the other hand, if the improper lesser-included offense is placed on the verdict form in an order and manner such that the "lesser" offense actually requires an equal or greater punishment than the charged offense, no benefit would be derived. There would be no tactical reason for the defendant's counsel not to object to such an improper lesser. Under those circumstances, the jury's selection of this improper offense while under a misconception that it is "lesser" than the charged crime would harm the defendant, whom the jury *450 may presumably have otherwise convicted of the next proper lesser offense on the verdict formone that may require or permit a punishment less severe than that of the charged crime or the improper lesser offense.
Ray acknowledged that this latter scenario may constitute fundamental error. Thus, it is fundamental error to allow a defendant to be convicted of a crime for which he was not charged and for which the defendant had no legal or strategic justification to include on the verdict form. Ray recognized, however, that a fundamental error analysis should not apply where the error was invited (thus the exception if the instruction was sought or relied upon), or where the failure to object may have been the result of a strategic decision intended to reap some ultimate benefit for the defendant (thus the exception for an improper instruction that was "lesser in degree and penalty"). 403 So.2d at 961.
There is another underlying concern in this case and in similar cases discussing the lesser-included offenses that are properly included on a verdict form and the order in which those lesser-included offenses are listed on the form. That concern involves whether a jury might be misled, and perhaps deprived of its inherent pardon power, by a verdict form that includes an offense that appears on the verdict form below the charged offense, suggesting to the jury that it will entail a lesser penalty for the defendant when in fact the secondary offense permits or requires an equal or greater penalty than the offense charged. This concern would theoretically be the same whether or not the lesser-included offense is properly on the verdict form.
This concern was the specific subject of Sanders v. State, 912 So.2d 1286 (Fla. 2d DCA 2005), aff'd, 944 So.2d 203 (Fla. 2006). In Sanders, this court considered whether attempted second-degree murder was a "true `lesser' offense" of attempted first-degree murder in a context where the 10-20-life statute applied. 912 So.2d at 1288. Unlike Ray and Chambers, there was no question in Sanders that attempted second-degree murder was a necessary lesser-included offense to attempted first-degree murder. Similar to this case, however, both the charged offense and the lesser offense in Sanders presented the risk of equally long sentences because of the 10-20-life provisions. In affirming Mr. Sanders' conviction, this court relied upon the fundamental error analysis in Ray, even though the lesser offense in Sanders was an appropriate necessary lesser-included offense. 912 So.2d at 1289-90. We held that the trial court did not err in designating this offense for the jury as a "lesser offense," even though the sentencing statutes for the two crimes permitted the same punishment. Id. at 1289. This court certified the following question to the supreme court: "In order for an offense to be a lesser-included offense, must it necessarily result in a lesser penalty than either the penalty for the main offense or the next greater offense on the verdict form?" Sanders, 912 So.2d at 1291.
The supreme court answered the certified question in Sanders in the negative and affirmed our decision with one significant disagreement with our reasoning. 944 So.2d at 206-207. The supreme court clarified that the analysis of Ray did not apply unless the complained-of instruction and entry on the verdict form were error. Id. at 206. Thus, if a given instruction involves a necessary lesser-included offense or a proper permissive lesser-included offense, Ray does not apply. In that event, the supreme court clarified, lesser-included *451 offenses are determined by examining only the elements of the offenses and the allegations in the charging documents. Sanders, 944 So.2d at 207. Those offenses that are properly charged and supported by the evidence are then listed on the verdict form. "The charged crime should be followed on the verdict form by the determined lesser included offenses in descending order by degree of offense. . . . Any factor required to be found by the jury for reclassification or enhancement purposes may then be placed in a separate interrogatory at the appropriate place." Id. at 207. Thus, under Sanders, the concern that a jury might be misled by a verdict form that lists a crime that is "lesser" when the punishment may actually be greater than the charged crime based upon other factual findings is dismissed. The placement of offenses on the verdict form depends solely upon their degree, not on the potential penalties that may result.
As to the proper application of Ray, the supreme court explained that the analysis in Ray applies only when the court first determines that an instruction on a lesser offense was error, at which point the court is required to assess whether that error is fundamental. 944 So.2d at 206.
Applying both Sanders and Ray to Mr. Chambers' case, the trial court should have listed the primary offense followed by those permissive or necessary lesser-included offenses in descending order based upon their degree and without regard to any reclassification or enhancement. Sanders, 944 So.2d at 207. The lesser-included offenses should have included only those offenses that were necessary lesser-included crimes and permissive ones that were charged in the information and supported by the evidence, or invited by Mr. Chambers. Ray, 403 So.2d at 959. Because the trial court included aggravated assault when the facts to support the charge were not alleged in the information, a trial error occurred. Id.[4] However, that error is only "fundamental" if it runs afoul of the principles espoused in Ray.
It is important to note that Ray's specific holding was that fundamental error did not occur in a case where the complained-of lesser offense was lesser in degree and lesser in penalty. Although Ray anticipated a case in which an improper instruction was listed as a lesser when it required a greater punishment, Ray did not involve that factual scenario. As a result, Ray did not address the specific question presented here: Is an improper instruction on a lesser-included offense fundamental error when the offense with or without reclassification is "lesser in degree" but the verdict form will allow the jury to make a finding that will permit the trial court to impose a penalty equal to the most severe penalty available for the greater offense? Reviewing the analysis employed in Ray and the concerns upon which that analysis were based, we conclude that these circumstances do not necessarily result in fundamental error.
As explained above, Ray's "lesser in degree and penalty" test, 403 So.2d at 961, recognized that a defendant might have a strategic reason to ignore or invite an erroneous jury instruction. Thus whether an erroneous instruction or option on the verdict form was fundamental related in part to whether it may have provided some perceived benefit to the defendant. In order for an error to be fundamental, it must be harmful. See Reed v. State, 837 *452 So.2d 366, 369-371 (Fla.2002); State v. Delva, 575 So.2d 643, 644-645 (Fla.1991). Ray ultimately turned upon whether the giving of the improper instruction was unequivocally harmful to the defendant. In the hypothetical case in which a jury is instructed on a legally improper offense that is presented to the jury as a "lesser" offense but actually requires an exactly equal or greater punishment than the charged offense, harm might be unequivocally established if the jury found the defendant guilty of the improper lesser offense. It appears, however, that this fact pattern has yet to emerge in the case law. If those circumstances existed, there would seem to be no question that trial counsel should object to the improper instruction and that trial counsel would have no tactical reason to permit the improper instruction.
In this case, however, the sentencing statutes did not require the trial court to impose the exact same or greater sentence for the lesser crime. Although findings supporting the 10-20-life enhancements would have required sentencing of twenty-five years to life for either attempted second-degree murder or aggravated assault, the trial judge retained discretion to impose a lesser sentence within this range based upon the jury's decision to determine guilt on a crime of a lesser degree than the charged crime. Indeed, we found this factor critical in Sanders, 912 So.2d at 1290, albeit in a case in which the supreme court ultimately determined Ray did not apply, Sanders, 944 So.2d at 206. Although the charged offense and aggravated assault both required the trial judge to impose a sentence in the range between twenty-five years' imprisonment and life if all of the aggravating factors existed, a reasonable lawyer might believe that a judge would be more likely to impose a sentence closer to the bottom of this range if the jury selected the lowest possible lesser offense.
What is more important, the options on the verdict form provided Mr. Chambers with a realistic possibility that the jury could select an option that would require the court to impose a lesser punishment than the punishment required for the primary offense of second-degree murder. As explained earlier, there was no dispute that a gun was involved in this incident but some dispute over whether Mr. Chambers intentionally fired the gun or whether it discharged accidentally during a struggle. Viewing the instructions and verdict form from trial counsel's perspective, if the jury were inclined to find Mr. Chambers guilty of second-degree murder, the 10-20-life enhancements would almost certainly apply. However, if the jury were inclined to find Mr. Chambers guilty of only aggravated assault, there would be a possibility that the jury could also conclude Mr. Chambers was not responsible for the gun's discharge or the resulting injury. If so, the trial judge would be required to impose a sentence less severe for aggravated assault than the penalty for second-degree murder with a firearm.
We do not address these tactical issues to evaluate the effectiveness of the trial lawyer. Instead, we point out these considerations because they play a role in deciding whether the giving of the instruction on aggravated assault without objection should be treated as a fundamental error. The fact that Mr. Chambers had a significant chance to benefit from the instruction and little chance to be harmed by it causes this court to conclude that the instruction was not fundamental error. This reasoning also recognizes that the analysis of fundamental error for such improper lesser offenses should not focus on the maximum possible punishment for each offense, but on the availability of *453 punishments less severe than those available for the charged offense.
Returning to our initial opinion in Mr. Chambers' direct appeal, it would appear that the language in Chambers explaining that "aggravated assault with a firearm" is lesser in degree and penalty than "second-degree murder with a firearm" is inexact. First, although our analysis of the degree of the respective crimes in footnote 7 of the opinion was generally correct, Chambers, 880 So.2d at 700 n. 7,[5] the supreme court in Sanders has now clarified that in determining the degree of the offenses, we should not have factored in the reclassification created by possession of a firearm. Thus, if aggravated assault had been charged in the information and properly included in the instructions and verdict form, it would have been properly included below attempted second-degree murder.
Of course, because aggravated assault was not a proper lesser-included offense, it should not have appeared in the instructions or on the verdict form at all. In determining that this error was not fundamental under Ray, we oversimplified the analysis when we concluded that aggravated assault with the appropriate aggravating factors was "lesser in penalty" than attempted second-degree murder with the appropriate aggravating factors. Rather, the range of potential penalties for these crimes if all of the enhancements applied were the same, and thus the worst potential penalties for the two crimes were identical. Nevertheless, the sentencing instructions and options on the verdict form provided Mr. Chambers with the realistic possibility that the jury could choose an option under the lesser offense which would have required the trial court to impose a sentence that was lesser in penalty than a sentence for second-degree murder with a firearm. In addition, even with all of the applicable enhancements, the trial judge retained the discretion to impose a lesser sentence if the jury convicted Mr. Chambers on the lesser offense. Perhaps we should have stated that the aggravated assault was "lesser in degree and potentially lesser in penalty" than the charged offense. At least in this case, the harm or benefit of the improper lesser-included offense is not measured by the worst possible sentence, but by the lesser punishments that might be available if the jury selected the unauthorized lesser offense.
We do not need to determine whether appellate counsel was ineffective for failing to argue this complicated point on rehearing. Because we conclude that the outcome of Mr. Chambers' original case would not have been altered by a motion for rehearing and that it would have resulted only in an adjustment to our reasoning, we deny this petition.

V. THE ADDITIONAL PROBLEM IN THE VERDICT FORM
By waiting for the supreme court's analysis in Sanders before resolving this case, this court has discovered another problem within the verdict form that we feel compelled to address. The verdict form listed attempted manslaughter as the next lesser offense to the charged offense of attempted second-degree murder, but above the offenses of aggravated battery and aggravated assault. Moreover, the verdict form *454 included the 10-20-life provisions as part of the manslaughter instructions.
Without regard to reclassification or enhancements, attempted manslaughter is a third-degree felony, see §§ 782.07(1), 777.04(4)(d); aggravated battery is a second-degree felony; see § 784.045(2); and aggravated assault is a third-degree felony, see § 784.021(2). Pursuant to the instructions in Sanders, therefore, the verdict form should presumably have been ordered as follows: attempted second-degree murder, aggravated battery, attempted manslaughter. As discussed above, if counsel had objected to the inclusion of aggravated assault, that offense would have been omitted and the next listed offense would have been felony battery.[6]
To further complicate matters, the mandatory minimum sentences required by the 10-20-life statute do not apply to attempted manslaughter, see § 775.087(2)(a)(1)(a-r) (enumerating offenses to which 10-20-life provisions apply); Murray v. State, 491 So.2d 1120, 1123 (Fla.1986) (concluding that statutory provision permitting enhancement for crime of "murder" did not permit enhancement on the crime of manslaughter), although the crime could be reclassified as a second-degree felony based upon the use of a weapon, see § 775.087(1) (permitting reclassification for use of a weapon for any felony in which the use of a weapon or firearm is not an essential element). As such, a verdict form in compliance with the supreme court's opinion in Sanders and the 10-20-life statute and one that did not include the lesser offense of aggravated assault would have permitted 10-20-life enhancements for the first two listed crimes attempted second-degree murder or aggravated battery. Thereafter, the jury's remaining options, each of which would not have permitted enhancement, would have been attempted manslaughter, felony battery, and battery.
As noted above, this anomaly only came to light because of the language in Sanders regarding the proper ordering of offenses on a verdict form. Prior to the opinion in Sanders, most lawyers and judges would *455 have assumed that all homicide offenses should be listed on the verdict form before the lesser offenses that were not homicide offenses. The schedule of lesser-included offenses contained in the Florida Standard Jury Instructions (Criminal) does not specifically include attempted crimes, but the schedules on completed homicides list offenses in this manner. Fla. Std. Jury Instr. (Crim.) at 622-624 (5th ed.).
Obviously, this issue was neither preserved in the trial court nor raised on direct appeal. We are not convinced that the ordering of the properly listed offenses as they appeared on Mr. Chambers' verdict form was error under the case law existing at that time. Thus, although one can argue that the inclusion of aggravated assault on the verdict form, coupled with the placement of attempted manslaughter above (rather than below) aggravated battery might have harmed Mr. Chambers' chances for a lesser sentence, we find no ineffective assistance of trial or appellate counsel in this regard. See, e.g., Gettel v. State, 449 So.2d 413 (Fla. 2d DCA 1984); Ramos v. State, 559 So.2d 705 (Fla. 4th DCA 1990).
Petition alleging ineffective assistance of appellate counsel denied.
NORTHCUTT and CASANUEVA, JJ., Concur.

Appendix A

EXCERPT OF VERDICT FORM
COUNT ONE (Marcia Radway, victim)
We the jury, find the defendant, Patrick Chambers
___ Guilty of Attempted Second Degree Murder
Degree of Felony: Second Degree. §§ 782.04(2) (classifying second-degree murder as a first-degree felony, punishable by life imprisonment); 777.04(4)(c) (providing that an attempt to commit a crime that is a first-degree felony punishable by life imprisonment is classified as a second-degree felony).
Permissible Sentence: The lowest permissible sentence under the guidelines up to and including the statutory maximum of 15 years' imprisonment (if the lowest permissible sentence under the guidelines exceeds the statutory maximum sentence, the guideline sentence must be imposed). §§ 775.082(3)(c); 921.0024(2).
And we further find during commission of said felony the defendant
___ was in actual possession of a firearm
Degree of Felony: First Degree. §§ 782.04(2) (classifying second-degree murder as a first-degree felony, punishable by life imprisonment); 777.04(4)(c) (providing that an attempt to commit a crime that is a first-degree felony punishable by life imprisonment is classified as a second-degree felony); 775.087(1)(b) (providing that actual possession of a weapon or firearm during the commission of a second-degree felony offense results in the crime being reclassified as a first-degree felony).

Permissible Sentence: Minimum mandatory term of 10 years' imprisonment, § 775.087(2)(a)(1)(a)(requiring 10-year minimum mandatory term when person is convicted of murder and actually possessed a firearm during the commission of the offense), and no more than 30 years' imprisonment, § 775.082(3)(b) (providing that the maximum penalty for a first-degree felony is 30 years' imprisonment), unless the lowest permissible sentence under the guidelines *456 exceeds the 30-year statutory maximum, § 921.0024(2).

___ was not in actual possession of a firearm
And we further find the defendant
___ did discharge said firearm during the commission of the felony
Degree of Felony: First Degree. §§ 782.04(2) (classifying second-degree murder as a first-degree felony, punishable by life imprisonment); 777.04(4)(c) (providing that an attempt to commit a crime that is a first-degree felony punishable by life imprisonment is classified as a second-degree felony); 775.087(1)(b) (providing that actual possession of a weapon or firearm during the commission of a second-degree felony offense results in the crime being reclassified as a first-degree felony).
Permissible Sentence: Minimum mandatory term of 20 years' imprisonment, § 775.087(2)(a)(1)(a), (2)(a)(2) (requiring 20-year minimum mandatory term when person is convicted of murder and discharges a firearm during the commission of the offense), and no more than 30 years' imprisonment, § 775.082(3)(b) (providing that the maximum penalty for first-degree felony is 30 years' imprisonment), unless the lowest permissible sentence under the guidelines exceeds the 30-year statutory maximum, § 921.0024(2).
___ did not discharge said firearm during the commission of the felony
And we further find the defendant's discharging the firearm
___ did result in great bodily harm to Marcia Radway
Degree of Felony: First Degree. §§ 782.04(2) (classifying second-degree murder as a first-degree felony, punishable by life imprisonment); 777.04(4)(c) (providing that an attempt to commit a crime that is a first-degree felony punishable by life imprisonment is classified as a second-degree felony); 775.087(1)(b) (providing that actual possession of a weapon or firearm during the commission of a second-degree felony offense results in the crime being reclassified as a first-degree felony).
Permissible Sentence: Minimum mandatory term of 25 years' imprisonment but no more than life imprisonment. § 775.087(2)(a)(1)(a), (2)(a)(3) (requiring 25-year minimum mandatory term when person is convicted of murder and discharges a firearm causing death or great bodily harm to any person during the commission of the offense).
___ did not result in great bodily harm to Marcia Radway
___ Guilty of Attempted Manslaughter, a lesser included
Degree of Felony: Third Degree. §§ 782.07(1) (classifying manslaughter as a second-degree felony); 777.04(4)(d) (providing that an attempt to commit a crime that is a second-degree felony is classified as a third-degree felony).
Permissible Sentence: The lowest permissible sentence under the guidelines up to and including the statutory maximum of 5 years' imprisonment (if the lowest permissible sentence under the guidelines exceeds the statutory maximum sentence, the guideline sentence must be imposed). §§ 775.082(3)(d); 921.0024(2).

* * *[NOTE: Although this verdict form included options for 10-20-life enhancements to the crime of attempted manslaughter, manslaughter is not an enumerated offense under the 10-20-life *457 statute as explained in the captions below]* * *

And we further find during commission of said felony the defendant
___ was in actual possession of a firearm
Degree of Felony: Second Degree. §§ 782.07(1) (classifying manslaughter as a second-degree felony); 777.04(4)(d) (providing that an attempt to commit a crime that is a second-degree felony is classified as a third-degree felony); 775.087(1)(c) (providing that actual possession of a weapon or firearm during the commission of a third-degree felony offense results in the crime being reclassified as a second-degree felony).

Permissible Sentence: The lowest permissible sentence under the guidelines up to and including the statutory maximum of 15 years' imprisonment (if the lowest permissible sentence under the guidelines exceeds the statutory maximum sentence, the guideline sentence must be imposed). §§ 775.082(3)(c); 921.0024(2). No minimum mandatory term of 10 years' imprisonment under § 775.087(2)(a)(1) because manslaughter is not an enumerated offense. See Murray v. State, 491 So.2d 1120, 1123 (Fla.1986); Strahorn v. State, 436 So.2d 447, 449 (Fla. 2d DCA 1983).

___ was not in actual possession of a firearm
And we further find the defendant ___ did discharge said firearm during the commission of the felony

Degree of Felony: Second Degree. §§ 782.07(1) (classifying manslaughter as a second-degree felony); 777.04(4)(d) (providing that an attempt to commit a crime that is a second-degree felony is classified as a third-degree felony); 775.087(1)(c) (providing that actual possession of a weapon or firearm during the commission of a third-degree felony offense results in the crime being reclassified as a second-degree felony). Permissible Sentence: The lowest permissible sentence under the guidelines up to and including the statutory maximum of 15 years' imprisonment (if the lowest permissible sentence under the guidelines exceeds the statutory maximum sentence, the guideline sentence must be imposed). §§ 775.082(3)(c); 921.0024(2). No minimum mandatory term of 20 years' imprisonment under § 775.087(2)(a)(2) because manslaughter is not an enumerated offense. See Murray v. State, 491 So.2d 1120, 1123 (Fla.1986); Strahorn v. State, 436 So.2d 447, 449 (Fla. 2d DCA 1983).

___ did not discharge said firearm during the commission of the felony And we further find the defendant's discharging the firearm
___ did result in great bodily harm to Marcia Radway

Degree of Felony: Second Degree. §§ 782.07(1) (classifying manslaughter as a second-degree felony;) 777.04(4)(d) (providing that an attempt to commit a crime that is a second-degree felony is classified as a third-degree felony); 775.087(1)(c) (providing that actual possession of a weapon or firearm during the commission of a third-degree felony offense results in the crime being reclassified as a second-degree felony). Permissible Sentence: The lowest permissible sentence under the guidelines up to and including the *458 statutory maximum of 15 years' imprisonment (if the lowest permissible sentence under the guidelines exceeds the statutory maximum sentence, the guideline sentence must be imposed). §§ 775.082(3)(c); 921.0024(2). No minimum mandatory term of 25 years' imprisonment under § 775.087(2)(a)(3) because manslaughter is not an enumerated offense. See Murray v. State, 491 So.2d 1120, 1123 (Fla.1986); Strahorn v. State, 436 So.2d 447, 449 (Fla. 2d DCA 1983).

___ did not result in great bodily harm to Marcia Radway
___ Guilty of Aggravated Battery, a lesser included
Degree of Felony: Second Degree. § 784.045(2) (classifying aggravated battery as a second-degree felony).
Permissible Sentence: The lowest permissible sentence under the guidelines up to and including the statutory maximum of 15 years' imprisonment (if the lowest permissible sentence under the guidelines exceeds the statutory maximum sentence, the guideline sentence must be imposed). §§ 775.082(3)(c); 921.0024(2).
And we further find during commission of said felony the defendant
___ was in actual possession of a firearm
Degree of Felony: First Degree. §§ 784.045(2) (classifying aggravated battery as a second-degree felony); 775.087(1)(b) (providing that actual possession of a weapon or firearm during the commission of a second-degree felony offense results in the crime being reclassified as a first-degree felony).
Permissible Sentence: Minimum mandatory term of 10 years' imprisonment, § 775.087(2)(a)(1)(g) (requiring 10-year minimum mandatory term when person is convicted of aggravated battery and actually possessed a firearm during the commission of the offense), and no more than 30 years' imprisonment, § 775.082(3)(b) (providing that the maximum penalty for first-degree felony is 30 years' imprisonment), unless the lowest permissible sentence under the guidelines exceeds the 30-year statutory maximum, § 921.0024(2).
___ was not in actual possession of a firearm
And we further find the defendant
___ did discharge said firearm during the commission of the felony
Degree of Felony: First Degree. §§ 784.045(2) (classifying aggravated battery as a second-degree felony); 775.087(1)(b) (providing that actual possession of a weapon or firearm during the commission of a second-degree felony offense results in the crime being reclassified as a first-degree felony).
Permissible Sentence: Minimum mandatory term of 20 years' imprisonment, § 775.087(2)(a)(1)(g), (2)(a)(2) (requiring 20-year minimum mandatory term when person is convicted of aggravated battery and discharges a firearm during the commission of the offense), and no more than 30 years' imprisonment, § 775.082(3)(b) (providing that the maximum penalty for first-degree felony is 30 years' imprisonment), unless the lowest permissible sentence under the guidelines exceeds the 30-year statutory maximum, § 921.0024(2).

*459 ___ did not discharge said firearm during the commission of the felony And we further find the defendant's discharging the firearm
___ did result in great bodily harm to Marcia Radway
Degree of Felony: First Degree. §§ 784.045(2) (classifying aggravated battery as a second-degree felony); 775.087(1)(b) (providing that actual possession of a weapon or firearm during the commission of a second-degree felony offense results in the crime being reclassified as a first-degree felony).
Permissible Sentence: Minimum mandatory term of 25 years' imprisonment but no more than life imprisonment. § 775.087(2)(a)(1)(g), (2)(a)(3) (requiring 25-year minimum mandatory term when person is convicted of aggravated battery and discharges a firearm causing death or great bodily harm to any person during the commission of the offense).
___ did not result in great bodily harm to Marcia Radway
___ Guilty of Aggravated Assault, a lesser included
Degree of Felony: Third Degree. § 784.021(2) (classifying aggravated assault as a third-degree felony).
Permissible Sentence: The lowest permissible sentence under the guidelines up to and including the statutory maximum of 5 years' imprisonment (if the lowest permissible sentence under the guidelines exceeds the statutory maximum sentence, the guideline sentence must be imposed). §§ 775.082(3)(d); 921.0024(2).
And we further find during commission of said felony the defendant
___ was in actual possession of a firearm
Degree of Felony: Third Degree. § 784.021(2) (classifying aggravated assault as a third-degree felony).
Permissible Sentence: Minimum mandatory term of 10 years' imprisonment, § 775.087(2)(a)(1)(f) (requiring 10-year minimum mandatory term when person is convicted of aggravated assault and actually possessed a firearm during the commission of the offense), and no more than 15 years' imprisonment, § 775.082(3)(c) (providing that the maximum penalty for second-degree felony is 15 years' imprisonment), unless the lowest permissible sentence under the guidelines exceeds the 15-year statutory maximum, § 921.0024(2).
___ was not in actual possession of a firearm
And we further find the defendant ___ did discharge said firearm during the commission of the felony
Degree of Felony: Third Degree. § 784.021(2) (classifying aggravated assault as a third-degree felony).
Permissible Sentence: Minimum mandatory term of 20 years' imprisonment, § 775.087(2)(a)(1)(f), (2)(a)(2) (requiring 20-year minimum mandatory term when person is convicted of aggravated assault and discharges a firearm during the commission of the offense), which is in excess of the statutory maximum of 15 years' imprisonment, § 775.082(3)(c). If the lowest permissible sentence under the guidelines exceeds the 20-year minimum, presumably that sentence would apply with the 20-year minimum mandatory term. § 921.0024(2).

*460 ___ did not discharge said firearm during the commission of the felony And we further find the defendant's discharging the firearm
___ did result in great bodily harm to Marcia Radway
Degree of Felony: Third Degree. § 784.021(2) (classifying aggravated assault as a third-degree felony).
Permissible Sentence: Minimum mandatory term of 25 years' imprisonment but no more than life imprisonment. § 775.087(2)(a)(1)(f), (2)(a)(3) (requiring 25-year minimum mandatory term when person is convicted of aggravated assault and discharges a firearm causing death or great bodily harm to any person during the commission of the offense).
___ did not result in great bodily harm to Marcia Radway
___ Guilty of Felony Battery, a lesser included
Degree of Felony: Third Degree. § 784.041(2) (providing that felony battery is a third-degree felony).
Permissible Sentence: The lowest permissible sentence under the guidelines up to and including the statutory maximum of 5 years' imprisonment (if the lowest permissible sentence under the guidelines exceeds the statutory maximum sentence, the guideline sentence must be imposed). §§ 775.082(3)(d); 921.0024(2).
___ Guilty of Battery, a lesser included
Degree of Misdemeanor: First Degree. § 784.03(1)(b) (providing that battery is a first-degree misdemeanor).
Permissible Sentence: The lowest permissible sentence under the guidelines up to and including the statutory maximum of 1 year of imprisonment (if the lowest permissible sentence under the guidelines exceeds the statutory maximum sentence, the guideline sentence must be imposed). §§ 775.082(4)(a); 921.0024(2).
___ Guilty of Assault, a lesser included
Degree of Misdemeanor:Second Degree. § 784.011(2) (providing that assault is a second-degree misdemeanor).
Permissible Sentence: The lowest permissible sentence under the guidelines up to and including the statutory maximum of 60 days' imprisonment (if the lowest permissible sentence under the guidelines exceeds the statutory maximum sentence, the guideline sentence must be imposed). §§ 775.082(4)(b); 921.0024(2).
___ Not Guilty
NOTES
[1] Mr. Chambers was also charged with tampering with evidence in violation of section 918.13, Florida Statute (2002), but that crime is unrelated to the issue presented in this decision.
[2] He received an additional consecutive sentence of 21.45 months' imprisonment for the charge of tampering with evidence.
[3] Because Mr. Chambers was convicted of aggravated assault relying on the elements in section 784.021(1)(a), Florida Statutes (2002), the use of a weapon was an essential element of the offense. As a result, aggravated assault in this case could not be reclassified. See § 775.087(1). Contrary to the description in our earlier opinion, Mr. Chambers was actually convicted of aggravated assault as a third-degree felony.
[4] It is interesting to note that if the instruction on aggravated assault had been proper, it appeared in the appropriate order on the verdict form pursuant to Sanders' instructions to list the offenses in order of degree without respect to punishment.
[5] This court stated in footnote 7: "Second-degree murder is a first-degree felony. An attempt to commit that crime reduces it to a second-degree felony. The use of a firearm, however, reclassifies the offense as a first-degree felony. Moreover, aggravated assault is a third-degree felony." (Citations omitted.) As explained in footnote 3 of this opinion, however, the use of a firearm did not result in a reclassification of aggravated assault to a second-degree felony.
[6] If aggravated assault were properly included on the verdict form, Sanders does not make clear where it should have been placed. Sanders did not discuss the appropriate order of offenses that are of the same degree. Attempted manslaughter and aggravated assault are both third-degree felonies without respect to reclassification. §§ 782.07(1), 777.04(4)(d), 784.021(2). Felony battery is also a third-degree felony. § 784.041(2). Although Sanders discourages a trial judge from examining potential penalties when determining the proper order of offenses on a verdict form, we are inclined to believe the trial court must do so when considering the proper order for offenses of the same degree. If that is true, it is also unclear whether the trial court should look at potential penalties in general, such as referring to the offense levels in the sentencing guidelines, or penalties that might be imposed based upon a potential enhancement or reclassification.

In this case, because felony battery is neither reclassified nor enhanced under section 775.087, it would seem to be the "least" of these three offenses. Attempted manslaughter is subject to reclassification for use of a weapon, but is not subject to enhancement for use of a firearm under section 775.087(2)(a)(1)(a-r). Aggravated assault, when use of a weapon is an element of the offense, is not subject to reclassification, but is subject to enhancement for use of a firearm under section 775.087(2)(a)(1)(f). Thus, aggravated assault as a third-degree felony can easily result in a mandatory sentence that is longer than the longest possible sentence for attempted manslaughter even when it is reclassified as a second-degree felony. We do not decide the proper order for these lesser offenses in this case, but the issue is certainly one that trial judges and trial lawyers should treat with considerable care when preparing jury instructions and a verdict form for a case involving several lesser offenses of the same degree.